UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 23-CR-20359-WILLIAMS/REID

UNITED STATES OF AMERICA

v.

MICHEL DUARTE SUAREZ,

    Defendant.
_____/

### AGREED FACTUAL BASIS FOR GUILTY PLEA

Had this case proceeded to trial, the parties agree that the United States would have proven the following facts beyond a reasonable doubt. The parties agree that these facts, which do not include all facts known to the United States and Defendant **MICHEL DUARTE SUAREZ** ("**SUAREZ**"), are sufficient to prove the guilt of the Defendant as to Counts 1 and 4 of the Indictment in this case.

From in or around March 2022, and continuing through in or around at least June 2022, in Miami-Dade County, in the Southern District of Florida, and elsewhere, **SUAREZ** conspired with Co-Conspirator 1 and others to commit bank fraud and mail fraud, in violation of Title 18, United States Code, Sections 1349, 1344, and 1341. Additionally, on or about April 18, 2022, in Miami-Dade County, in the Southern District of Florida, and elsewhere, **SUAREZ**, during and in relation to his participation in the conspiracy to commit bank fraud and mail fraud, knowingly transferred, possessed, and used, without lawful authority, the means of identification of another person, that is, the name and signature of Individual 1, in violation of Title 18, United States Code, Section 1028A(a)(1).

1

During the conspiracy period, **SUAREZ** resided in Panama City, Panama. In or around March 2022, Co-Conspirator 1 introduced **SUAREZ** to a confidential informant ("CI 1") for the purpose of helping **SUAREZ** launder money **SUAREZ** was stealing from a bank account owned by Individual 1. Individual 1 was approximately 82 years old at the time. As detailed below, **SUAREZ** had access to Individual 1's account, created fraudulent checks from that account, and provided direction to Co-Conspirator 1 and the confidential informants on how to carry out the scheme.

On or about March 16, 2022, **SUAREZ** had a recorded WhatsApp call with CI 1 where he (**SUAREZ**) told CI 1 that he (**SUAREZ**) had an account with $800,000 in it and that he has been taking money out of the account little by little. **SUAREZ** proposed sending CI 1 fraudulent checks from the account and asked CI 1 to provide names, preferably names of companies, that **SUAREZ** could make the checks payable to. On or about March 17, 2022, **SUAREZ** explained to CI 1 that he (**SUAREZ**) has access to the accounts of elderly individuals, typically between 70 to 80 years old.

CI 1 then introduced **SUAREZ** to another confidential informant ("CI 2"), and **SUAREZ** began communicating with CI 2 via recorded WhatsApp calls and captured messages. On or about March 29, 2022, CI 2 provided **SUAREZ** the name of Company 1 for the first fraudulent check.

On or about April 18, 2022, **SUAREZ** sent CI 2 a check payable to Company 1 in the amount of $25,000, to be drawn from Individual 1's bank account at Truist[1] (formerly SunTrust).[2]

---

[1] Truist was a financial institution with offices located in the Southern District of Florida whose accounts were insured by the Federal Deposit Insurance Corporation.

[2] The checks sent by **SUAREZ** bore SunTrust's logo.

SUAREZ proposed that the two split the fraud proceeds 50/50. On or about April 21, 2022, an envelope containing this check was delivered to the Southern District of Florida and received by federal agents. The check contained Individual 1's full name, his/her bank account and routing numbers, the date (April 18, 2022), the amount ($25,000), the payee (Company 1), a false notation on the memo line, and a forged signature purporting to be that of Individual 1. This forged signature appeared deliberately designed to resemble that of Individual 1's signature on his/her signature card for his/her bank account.

On or about April 27, 2022, **SUAREZ** directed CI 2 to wire half of the proceeds – or $12,500 – to an account at Bank of America in the name of Online Electronics. **SUAREZ** was a signatory on this Bank of America account and was listed as the registered agent for Online Electronics on corporate records filed with the Florida Secretary of State.

In early May 2022, **SUAREZ** sent additional fraudulent checks drawn from Individual 1's bank account at Truist to CI 2. On or about May 3, 2022, an envelope identifying **SUAREZ** as the sender from Panama City, Panama, and addressed to Company 1 was received by government agents in the Southern District of Florida. The envelope contained three checks to be drawn from Individual 1's bank account at Truist. Two of the checks were payable to Company 2, in the amounts of $19,200 and $23,000, and one check was payable to Company 1 in the amount of $27,800.

On or about May 10, 2022, CI 2 called **SUAREZ** and told **SUAREZ** he (CI 2) would have the money the following day and would send half of **SUAREZ**'s proceeds the following day and the remainder the day after that. CI 2 and **SUAREZ** also discussed that Co-Conspirator 1 would receive 10%, to be split evenly from **SUAREZ** and CI 2's share of the fraud proceeds. CI 2 asked **SUAREZ** whether he (**SUAREZ**) wanted CI 2 to pay Co-Conspirator 1 in cash and to deduct 5%

from **SUAREZ**'s share before sending **SUAREZ** his share of the fraud proceeds. **SUAREZ** agreed. On or about May 11 and 12, 2025, government agents wired approximately $22,325 to **SUAREZ**'s Online Electronics account at Bank of America and $10,925 to **SUAREZ**'s personal bank account at Citibank.

On or about June 24, 2022, CI 2 met with Co-Conspirator 1 in person to provide him/her $1,750 in cash as Co-Conspirator 1's share of the money stolen from Individual 1's bank account.

In total, **SUAREZ** and his co-conspirators stole $803,146 from Individual 1's bank account at Truist through the issuance of more than eighty (80) fraudulent checks to numerous different payees, including at least 5 individuals and various companies. Individual 1 reviewed the individuals' names and company names and confirmed s/he did not authorize these check transactions.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charges against me. It does not include all of the facts known to me concerning the criminal activity in which I and others were engaged. I make this statement knowingly and voluntarily because I am in fact guilty of the crimes charged.

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: 7/9/25     By: _____
                 Alexander Thor Pogozelski
                 Assistant U.S. Attorney

Date: 7/9/25     By: _____
                 MaeAnn Dunker
                 Attorney for Defendant

Date: 7/9/25     By: _____
                 Michel Duarte Suarez
                 Defendant

5